UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES KELLY, ANDRES TORRES FLORES,  )
JOSE LUIS CRUZ,                      )
                                     )
                Plaintiffs,          )          2:08-cv-00088-KJD-RJJ
                                     )
vs.                                  )
                                     )          **O R D E R**
CSE SAFEGUARD INSURANCE              )
COMPANY, COREY HILTON,               )
individually, HILTON ENGLISH &       )
ASSOCIATES, LLC and DOES I           )
through V, inclusive,                )
                                     )
                Defendants.          )
_____)

This matter was referred to the undersigned Magistrate Judge on Defendant CSE Safeguard Insurance Company's Motion To Disqualify Counsel (#86). The Court has considered Defendant's Motion (#86); Plaintiffs' Opposition (#90); and Defendant's Reply (#92).

**BACKGROUND**

On March 19, 2001, Plaintiff James Kelly submitted a claim to Defendant CSE Safeguard Insurance Company (CSE) for personal injuries stemming from a motor vehicle accident. The accident occurred when CSE's insured, Andre Torres Flores, allowed Jose Louis Cruz to drive his vehicle who then rear-ended Kelly. Unable to settle the claim, Kelly filed a state court complaint for damages against Flores and Cruz. That case resulted in a judgment in favor of Kelly against Cruz and Flores.

On December 19, 2007, Plaintiff Kelly, along with Cruz and Flores, filed this lawsuit against CSE for insurance bad faith and other causes of action alleging damages stemming from CSE's handling of the underlying claim. CSE filed a motion to dismiss Plaintiffs Kelly and Cruz on the ground that neither had standing to pursue the bad faith claim. (#30). The Court granted the motion

1    as to Kelly without prejudice.  (#61).  The Court instructed Kelly to file an amended complaint that

2    included the details of the alleged assignment from Flores in order to demonstrate that the

3    assignment was not an improper splitting of causes of action.  The motion was denied as to Cruz

4    who, as the permissive driver of CSE's insureds vehicle, had a sufficient contractual relationship

5    with CSE to establish standing for purposes of a bad faith claim.  (#61).

6        Plaintiffs' filed an Amended Complaint.  (#62).  The Amended Complaint noted that Plaintiff

7    Kelly executed on his previous judgment against Plaintiff Jose Cruz.  As a result, Kelly obtained a

8    Sheriff's Certificate of Sale of Property verifying that he had purchased a chose in action and any

9    related claims of Cruz as against CSE.  The Amended Complaint also included an attached

10   assignment from Flores, wherein Flores allegedly assigned all of his rights against CSE to Kelly.

11   CSE has filed a motion to dismiss the amended complaint.  (#70).  Plaintiffs' have filed a motion

12   to dismiss Flores and Cruz from the suit due to their alleged assignment of all rights against CSE to

13   Kelly.  (#84).  Resolution of these motions is still pending.

14        Currently before the Court is CSE's motion requesting that attorney David Sampson, and

15   Christensen Law Offices, be disqualified from further representing Plaintiffs in this matter.  (#86).

16   CSE seeks to disqualify Sampson on the ground that he is a necessary witness pursuant to Nevada

17   Rule Of Professional Conduct (NRPC) 3.7. CSE also seeks disqualification based on an alleged

18   conflict of interest, arising under NRPC 1.7 and 1.8, between Plaintiff Kelly and Plaintiffs Cruz and

19   Flores.

20                              **DISCUSSION**

21        Disqualification motions present courts with a delicate and sometimes difficult balancing

22   task.  *Brown v. Eighth Judicial Dist. Court ex rel. County of Clark*, 116 Nev. 1200, 14 P.3d 1266,

23   1269-70 (Nev. 2000).  Close cases are resolved in favor of disqualification.  *Palmer v. Pioneer Inn*

24   *Assocs.*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998) ("Where disqualification is contemplated, 'any

25   doubt is resolved in favor of disqualification.'" (citing *Faison v. Thornton*, 863 F.Supp. 1204, 1216

26   (D. Nev. 1993), *overruled on other grounds*, 338 F.3d 981 (9th Cir. 2003)).   Nevertheless,

27   "[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel

28   because there is a significant possibility of abuse for tactical advantage. *Optyl Eyewear Fashion Int'l*

1  *Corp. v. Sytle Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted).  The moving

2  party bears the burden of establishing an ethical violation or other factual predicate upon which the

3  motion depends.  *See United States v. Walker River Irr. Dist.*, 2006 WL 618823 (D. Nev.) (citing

4  *Colyer v. Smith*, 50 F.Supp.2d 966, 967 (C.D. Cal. 1999).  Attorneys admitted to practice before this

5  court must "adhere to the standards of conduct prescribed by the Model Rules of Professional

6  Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such

7  may be modified by this court."  Local Rule (LR) IA 10-7(a).

8  **1. Necessary Witness**

9       CSE claims that Sampson, and Christensen Law Offices, should be disqualified because

10  Sampson and "every member of [Christensen Law Offices]" are key witnesses in this bad faith

11  litigation.  Pursuant to NRPC 3.7:

12       (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be
         a necessary witness unless:

13

14            (1) The testimony relates to an uncontested issue;

15            (2) The testimony relates to the nature and value of legal services
              rendered in the case; or

16            (3) Disqualification of the lawyer would work substantial hardship on the
              client.

17

18       (b) A lawyer may act as advocate in a trial in which another lawyer in the
         lawyer's firm is likely to be called as a witness unless precluded from doing so
         by Rule 1.7 or Rule 1.9.

19

20  As the text of the Rule indicates, the court must first determine whether the lawyer is "likely to be

21  a necessary witness."  *See cf.*, *DiMartino v. Eighth Judicial District Court*, 66 P.3d 945, 947, 119

22  Nev. 119 (2003); *see also Borom v. Town of Merrillville*, 2007 WL 1797639 (N.D. Ind.) (the primary

23  consideration is whether a lawyer is a necessary witness).  If the lawyer is not "likely to be a

24  necessary witness" the inquiry ends.   Moreover, "[b]ecause the rule is meant to eliminate any

25  confusion and prejudice that could result if an attorney appears before a jury as an advocate and as

26  a witness, pretrial disqualification is generally not necessary."[1]  *DiMartino*, 66 P.3d at 947.

27       [1]  Disqualification from pretrial matters may be appropriate where the pretrial activity includes
28  obtaining evidence which, if admitted at trial, would reveal the attorney's dual role – such as taking
    depositions.  *See cf.*, *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.*, 966 F. Supp.

1    It is not difficult to envision circumstances where NRPC 3.7 is invoked for tactical

2  advantage, delay, or other improper purposes.  Accordingly, courts must be particularly sensitive to

3  disqualification issues presented under NRPC 3.7.  The party seeking disqualification bears the

4  burden of showing, with specificity, that the attorney sought to be disqualified is a necessary witness.

5  *See Borom*, 2007 WL 1797639 at *2; *see also Oswell v. Morgan Stanley Dean Witter & Co., Inc.*,

6  2007 WL 2446529 (D.N.J.).  "Blanket allegations that an attorney's testimony is relevant to a party's

7  claim is an insufficient basis upon which to discern whether the attorney 'will truly be a necessary

8  witness in the sense that there are things to which he will be the only one to testify.'"  *Machea*

9  *Transport Co. v. Philadelphia Indemnity Company*, 463 F.3d 827, 833 (8th Cir. 2006) (citation

10  omitted).   The majority of courts that have considered this issue require the party seeking

11  disqualification to demonstrate, at a minimum, that the sought after testimony is "relevant, material

12  and unobtainable elsewhere."  *See e.g.*, *World Youth Day, Inc. v. Famous Artists Merchandising*

13  *Exchange, Inc*., 866 F. Supp. 1297, 1302 (D. Colo. 1994)).  Merely cumulative testimony does not

14  make a lawyer a necessary witness.  *Laforest v. Ameriquest Mortgage, Co.*, 2006 WL 2228871 *3

15  (D. Mass.).

16    Here, CSE argues that Sampson and other members of Christensen Law Offices are necessary

17  witnesses in this matter because they were the sole cause of this bad faith litigation. CSE claims that

18  Sampson and his firm "orchestrated" four years of protracted litigation and "set up" CSE for this bad

19  faith lawsuit.  The only concrete example offered by CSE to support its contention is a demand letter

20  sent to an invalid address without supporting medical records or a medical records authorization

21  form.  CSE has failed to demonstrate how testimony from Sampson, or any other employee of

22  Christensen Law Offices, regarding the demand letter would be relevant or material to this action.

23  The content of the letter is undisputed.  The recipient of the letter is undisputed.  The failure to

24  provide medical and billing records is not relevant or material to whether it was reasonable for CSE

25  to request the records or investigate the factual basis of the demand in the first place.  The claim that

26  CSE was "set up"  is merely a blanket allegation that is insufficient to show that Sampson, or any

27

28  1297, 1304 (D. Colo. 1994).

1  other employee of his firm, is a necessary witness in this matter. *See Machea Transport Co.*, 463

2  F.3d at 833.

3  Likewise, CSE's claim that Sampson is a necessary witness regarding his refusal to settle the

4  underlying claim is an unsupported allegation. According to CSE, by refusing to settle the

5  underlying litigation, Sampson caused the stipulated judgment to be entered against his current

6  clients, Flores and Cruz. CSE has made no effort to show how Sampson's testimony regarding

7  settlement in the underlying litigation is either relevant or material to the issues in this litigation.

8  The motives of a third-party, however nefarious, in refusing to accept a settlement offer are not

9  relevant to the question of whether CSE was reasonable in its coverage decisions vis-a-vis its own

10  insureds. CSE's claim that any settlement offer it made, or would have made, was going to be

11  rejected by Sampson and Christensen Law Offices fails for the same reason.

12  CSE also claims that Sampson is a necessary witness regarding Flores assignment of his

13  rights against CSE to Kelly. The authenticity of Flores assignment is an important procedural issue

14  in this case. Kelly, the third-party claimant in the underlying case, has no standing to pursue a claim

15  against CSE for bad faith without first obtaining a judgement against the alleged tortfeasor. *See*

16  *Hunt v. State Farm Mut. Auto. Ins. Co.*, 655 F.Supp. 284, 287 (D. Nev. 1987) (citation omitted).

17  Kelly obtained a stipulated judgment against Flores in the underlying litigation. However, obtaining

18  a judgment is insufficient, by itself, to confer standing on a third-party claimant. *Pasina v. California*

19  *Cas. Indem. Exchange*, 2008 WL 5083831 *4 (D. Nev.). A third-party, like Kelly, receives standing

20  by virtue of an assignment or execution by an insured. *Id.*; *see also Hall v. Enterprise Leasing*

21  *Co. W.*, 137 P.3d 1104 (Nev. 2006).

22  Attached to the Amended Complaint (#62) is an assignment of rights from Flores to Kelly.

23  It is dated February 24, 2009, and is not notarized. CSE is challenging the authenticity of the

24  assignment. CSE argues that Sampson is a necessary witness in that inquiry because he was present

25  when Flores allegedly signed the assignment. *See,* Letter from Diane M. Mullenix, Esq., attached

26  as Ex. B-4 to Defendant's Motion (#86). Sampson claims that he does not recall whether he was in

27  the room when Flores signed the assignment. *See,* Letter from David Sampson, attached as Ex. B-5

28  to Defendant's Motion (#86). However, Sampson identified Dawn Hooker, an attorney in his office,

1    as a person who was present with Flores when he signed the subject assignment. Letter Ex. B-5.

2    Sampson also stated that if CSE felt it needed to depose Ms. Hooker regarding the authenticity of

3    the assignment, it was free to do so.  Letter, Ex. B-5.

4           CSE's claim that Sampson is a necessary witness regarding the authenticity of the Flores

5    assignment fails for two reasons.  First, even assuming the relevance and materiality of testimony

6    regarding the assignment, CSE must also show that it cannot be obtained  elsewhere.  *E.g.*, *World*

7    *Youth Day, Inc.*, 866 F. Supp. at 1302.  Sampson identified Dawn Hooker, an attorney in his office,

8    as a person with actual first-hand knowledge regarding the Flores assignment. Hooker is able to

9    testify regarding the circumstances surrounding the February 24, 2009, assignment.  For whatever

10   reason, CSE rejected this offer and has taken the position that Sampson must testify regarding the

11   assignment. Clearly, the testimony CSE seeks, and claims is "crucial", is obtainable from a source

12   other than Sampson.  The mere fact that CSE may want Sampson to testify does not make him a

13   necessary witness.

14          Second, NRPC 3.7 "is meant to eliminate any confusion and prejudice that could result if an

15   attorney appears before a jury as an advocate and as a witness, pretrial disqualification is generally

16   not necessary." *DiMartino*, 66 P.3d at 947.  The validity of the assignment presents an issue that will

17   only be relevant during the pretrial phase of this litigation.  If the assignment is valid, Kelly has

18   standing to pursue Flores' claims against CSE.  If the assignment is invalid, Kelly does not have

19   standing to pursue Flores' claims against CSE.  CSE has not shown how resolution of this issue will

20   ever be relevant to the substantive merits of this case.  Consequently, the Court finds that CSE has

21   not met its burden to show that Sampson or Christensen Law Offices must be disqualified pursuant

22   to NRPC 3.7.

23   **2.  Conflict of Interest**

24          CSE also argues that Sampson, and his firm, must be disqualified because of a conflict of

25   interest between Plaintiff Kelly and Plaintiffs Cruz and Flores.  Although difficult to distill, it

26   appears that CSE's conflict of interest claims arise under Nevada Rules of Professional Conduct  1.7

27   and 1.8.  Neither party has addressed the threshold issue of whether CSE has standing to request

28   disqualification in this matter based on the alleged conflict of interest.

"Neither the United States Supreme Court nor the Ninth Circuit has addressed the particular question of whether the standing doctrine bars a nonclient party from moving to disqualify the opposing party's counsel on the grounds of a conflict of interest." *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W. D. Wash. 2006).  The seminal case within the Ninth Circuit dealing with this issue is *Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999).  In *Colyer*, the court noted the general rule that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." 50 F. Supp. 2d at 971 (citing *Karza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998)).  The court in *Colyer* also noted the majority view that "only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that of current or former client. 50 F. Supp. 2d at 969.

In addressing the standing question, the court held that a nonclient litigant "must establish a personal stake in the motion to disqualify sufficient to satisfy the irreducible constitutional minimum of Article III."  50 F. Supp. 2d at 971.  "Generally, only the former or current client will have such a stake in a conflict of interest dispute."  *Id.*  However, even in the absence of an established personal stake, a nonclient party may have standing to bring a motion to disqualify "where an ethical breach so infects the litigation ... that it impacts the moving party's interest in a just and lawful determination of [the moving party's] claims." *FMC Technologies, Inc*, 420 F. Supp. 2d at 1156 (citing *Colyer*, 50 F. Supp. 2d at 971-72).  "In such a case, the prudential barrier to litigating the rights and claims of third parties ... [is] ... overcome by the court's inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice."  *Id.*

The party seeking disqualification bears the burden of establishing that it has standing to do so.  *Walker River Irr. Dist.*, 2006 WL 618823 *4.  CSE's only claimed ethical breaches deal directly with the attorney-client relationship between Sampson and his clients.  CSE has made no attempt to establish that it has the type of personal stake necessary to file this motion to disqualify.  Given the general rule that only former or current clients have the necessary personal stake in a conflict of interest dispute, the Court cannot, without more, find that CSE has the personal stake necessary to establish standing.

1    Further, CSE has failed to show that the ethical conflicts claimed to be at issue here

2  sufficiently impact the "just and lawful determination" of its claims.  CSE's argument that

3  Sampson's attempt to condition depositions on an agreement that CSE not bring a motion to

4  disqualify is pure speculation.  Despite any ethical implications with such a proposal, it is certainly

5  not an admission of, or evidence of, a conflict of interest.  CSE's bald allegations are unsupported

6  and misguided.  Absent evidence to the contrary, a court "'must assume that an attorney will observe

7  his responsibilities to the legal system, as well as to his client.'"  *Walker River Irr. Dist.*, 2006 WL

8  *5 (citing *Geders v. United States*, 425 U.S. 80, 93 (1976) (Marshall, J., concurring)).

9    CSE also claims that Sampson has violated the Rules of Professional Conduct by obtaining

10 an assignment from Flores, and purchasing a chose in action from Cruz.  According to CSE, because

11 a punitive damages claim is not assignable, by facilitating the assignment and chose in action,

12 Sampson has deprived Flores and Cruz of a valuable right.  This is a remarkable claim.  Essentially,

13 CSE is arguing that because its potential liability has been limited there has been an ethical violation.

14 CSE fails to explain how an assignment which limits its monetary exposure would, in any way,

15 negatively impact its interest in the just and lawful determination of its claims.

16    CSE's final claim is that Sampson should be disqualified because he obtained a chose in

17 action from Cruz on behalf of Kelly.  CSE makes the unsupported allegation that this action may

18 have run afoul of Nevada criminal law.  That CSE includes this argument in its brief without

19 providing any factual or legal basis for the position is troubling.  Further, CSE has made no attempt

20 to show how obtaining the chose in action violates NRPC 1.8 The party seeking disqualification

21 bears the burden of demonstrating an ethical violation that supports its request.  Simply citing a rule

22 and telling the court to look at is woefully inadequate and falls short of any accepted standard.

23    Accordingly, the court finds that CSE has failed to establish that it has a personal stake in the

24 motion to disqualify sufficient to demonstrate standing.  Likewise, CSE has failed to show an ethical

25 breach that so infects the litigation that it impacts CSE's interest in a just and lawful determination

26 of its claims.  Consequently, CSE does not have standing to request disqualification based on the

27 conflict of interest alleged here.

28 . . . .

1

## ORDER

2    Based on the foregoing, and good cause appearing therefore,

3    IT IS HEREBY ORDERED that Plaintiffs Motion to Disqualify Counsel (#86) is **DENIED**.

4    DATED this __8th__ day of September, 2010.

5

6

7    ROBERT J. JOHNSTON
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28