1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

JAMES KELLY,

     Plaintiff,

v.

CSE SAFEGUARD INSURANCE
COMPANY,

     Defendant.

2:08-cv-88-KJD-RJJ

**ORDER**

Defendant's Emergency Motion for Protective
Order (#139)

Defendant's Motion for Sanctions (#151)

     This matter comes before the Court on Defendant's Emergency Motion for Protective
Order (#139) and Defendant's Motion for Sanctions (#151). The Court considered Plaintiff's
Response (#141), Defendant's Reply (#143),  Defendant's Supplement to Motion for Protective
Order (#150) and Plaintiff's Response (#152).

## BACKGROUND

     This is an insurance bad faith (refusal to settle) case that stems from an automobile
collision, in which Plaintiff, James Kelly, was injured.  The discovery dispute currently before
the Court centers around the deposition of John Phelps, an employee of Mosher Administrative
Services (Mosher).  Mosher was hired by CSE Safeguard Insurance Company (CSE) to handle
claims adjustment duties during the time the underlying incident occurred, March 2001.
However, CSE and Mosher ended their relationship in 2003.  At that time, CSE began handling
all claims, including Kelly's claim, under CSE policies.  All previously generated claim files
were supposedly turned over to CSE.  Seven years later, Plaintiff took Phelps' deposition
regarding the handling of Kelly's claim by Mosher and other related topics.

Without CSE's knowledge, Phelps printed out Mosher's claim file log notes that were still contained in Mosher's computer system, and brought them to the deposition. These files were marked as "Exhibit 10" to the deposition. Shortly after the documents were marked, CSE and Mosher's counsel took a short break. After the break, Mosher informed Kelly that the claim file logs printed out by Phelps had already been produced during discovery, but in a redacted form. Further, counsel stated that some of the information contained in the documents was subject to the attorney-client privilege held between CSE and CSE's counsel. CSE and Mosher then requested that the claim log notes be redacted to conform with the copy already produced. Plaintiff's counsel refused to allow any redaction of the documents. The documents remained in the custody of the court reporter until the transcript was produced and distributed on May 5, 2011. The transcript included an unredacted copy of the documents as Exhibit 10.

CSE asserts that Exhibit 10 was sealed and should not have been viewed or used by Plaintiff's counsel. As a result, CSE seeks sanctions. Plaintiff argues that no improper behavior took place because Exhibit 10 was not sealed or protected and that any privilege that may have protected the documents was waived.

CSE seeks an order instructing Plaintiff to return the unredacted copy to Mosher, that any unredacted copies in Plaintiff's possession be destroyed, and that Plaintiff be prohibited from referencing or referring to the redacted portions of Exhibit 10. Kelly opposes the motion, arguing that the documents have been properly disclosed and that any and all privileges or protections have been waived.

## DISCUSSION

### I. Whether Exhibit 10 is Privileged and Should be Protected

CSE argues that the documents should be protected because they have already been produced in a redacted form in order to protect attorney-client and work product protection. Plaintiff asserts that there is no attorney-client privilege because the documents were on Mosher's computer system, and that even if there was a privilege, CSE waived it by not objecting

2

1    to the exhibit before it was marked at the deposition.

2         The Court may, for good cause, issue an order protecting a party from annoyance,

3    oppression, or undue burden or expense by forbidding discovery or preventing discovery of

4    certain matters.  FED. R. CIV. P. 26(c)(1).  The party seeking a protective order bears the burden

5    of demonstrating good cause by "showing that specific prejudice or harm will result if no

6    protective order is granted."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130

7    (9th Cir. 2003).

8         When a disclosure is made during a Federal proceeding the disclosure does not operate as

9    a waiver if: 1) the disclosure is inadvertent; 2) the holder of the privilege or protection took

10   reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify

11   the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).  FED. R.

12   EVID. 502.

13        A disclosure is inadvertent when it is a mistaken, unintended disclosure.  *Amobi v. Dist.*

14   *of Columbia Dept. of Corrections*, 262 F.R.D. 45, 53 (D.D.C. 2009).  Here, the disclosure was

15   not intentional.  CSE did not know that Mosher had kept CSE claim log notes on its computer

16   system.  CSE did not know that Phelps had printed out the claim log and brought it with him to

17   the deposition.  Further, CSE had already produced a redacted copy of the claim log.  CSE did

18   not realize that Phelps had unredacted copies of the claim log until the deposition had already

19   commenced and the documents had been marked.  The disclosure of the unredacted copy was

20   inadvertent.

21        Next, Rule 502 requires that CSE take reasonable steps to prevent disclosure.  In 2003,

22   CSE physically took back all of its claim files, with the understanding that Mosher no longer

23   possessed any documents related to claims on CSE insurance policies.  Cushing Affidavit at 1 ¶

24   4, Attached as Exhibit A to Defendant's Motion for Protective Order (#139).  CSE also contacted

25   Mosher before the deposition in order to ensure that Mosher no longer possessed any documents,

26   including computer claim logs, responsive to the subpoena. Cushing Affidavit at 1 ¶ 6, Attached

27

28                                            3

1    as Exhibit A to Defendant's Motion for Protective Order (#139).  Despite these precautions, CSE

2    was unable to prevent Phelps from printing out and bringing the documents in question to the

3    deposition.  Though CSE could have taken the additional step of reviewing any documents in

4    Phelps' possession before the deposition began, the steps CSE took were reasonably designed to

5    prevent disclosure.  This is especially so, given the fact that Mosher and CSE terminated their

6    relationship in 2003, and the deposition was conducted in 2011.  Such a long time period,

7    combined with Mosher's statements that it no longer possessed documents, would have made it

8    difficult for CSE to predict that Phelps would still have access to the electronic claim log over

9    seven years after the termination of the relationship between Mosher and CSE.  CSE took

10   reasonable steps to prevent disclosure of the claim log.

11          Finally, Rule 502 requires that the disclosing party promptly take reasonable steps to

12   rectify the error. When the privilege holder objects immediately upon discovery of the

13   inadvertent disclosure, Rule 502(b)(3) is satisfied.  *Luna Gaming-San Diego, LLC v. Dorsey &*

14   *Whitney, LLP*, 2010 WL 275083 at *5, 2010 U.S. Dist. LEXIS 3188 at *13 (S.D. Cal. 2010).

15   CSE addressed the inadvertent disclosure shortly after the documents were marked at the

16   deposition.  As soon as CSE became aware that the marked exhibit contained privileged material,

17   CSE requested that the privileged material be set aside for redaction or that the parties enter into

18   a stipulation allowing the exhibit to be redacted.  Phelps Deposition at 26-35, Attached as

19   Exhibit C to Defendants Motion for Protective Order (#139).  Plaintiff refused.  CSE promptly

20   took reasonable steps to rectify the inadvertent disclosure.  The fact that the exhibit was already

21   marked is of no consequence.  *See Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993 at

22   *5, 2011 U.S. Dist. LEXIS 30872 at *14-16 (N.D. Cal. 2011) (holding that an inadvertent

23   disclosure of unredacted emails during a deposition did not result in a waiver of attorney-client or

24   work product protection where the document had already been marked as an exhibit to the

25   deposition).

26          Plaintiff's argument that the privilege is waived because the claim log was in Mosher's

27

28                                                   4

possession must also fail.  Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege.  *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Here, however, CSE never disclosed the claim log to Mosher as a third party.  The only reason Mosher possessed the privileged information was because Mosher was formerly an authorized agent of CSE.  Mosher simply possessed the claim log because it never returned or erased the electronic file when its relationship with CSE was terminated in 2003. There is nothing to suggest that Mosher ever had the authority to waive CSE's attorney-client privilege. It still would be unable to do so, even after termination of its relationship with CSE. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (holding that when a corporate employee cannot waive the corporation's attorney client privilege, that same individual could not do so once he is an ex-employee). Kelly also argues that disclosure of Exhibit 10 to the court reporter qualifies as disclosure of privileged material to a third party and constitutes waiver. However, Kelly cites no authority to support such an assertion, and it is rejected.

Because Exhibit 10 was inadvertently disclosed and because CSE took reasonable steps to prevent the disclosure and rectify the error, the attorney-client privilege protecting the redacted portions of Exhibit 10 is not waived. Good cause exists to support the issuance of a protective order. Kelly must return all unredacted copies of Exhibit 10 to CSE and destroy any unredacted electronic copies. Kelly is prohibited from using unredacted portions in any manner.

## II.  Whether Kelly Should be Sanctioned for Reviewing and Using Privileged Portions of Exhibit 10

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

FED. R. CIV. P. 26(b)(5)(B).

5

1    In *Fuller v. Interview, Inc.*, 2009 WL 3241542 (S.D.N.Y. 2009), the court held that an

2    attorney's conduct violated FED. R. CIV. P. 26(b)(5)(B) where an attorney was notified that

3    privileged emails had been inadvertently disclosed, but refused to destroy or return them, kept

4    them for over 10 months, and used them in subsequent court filings. *Fuller v. Interview, Inc.*,

5    2009 WL 3241542 at *2 n.1, 2009 U.S. Dist. 93157 at *4 n.1 (S.D.N.Y. 2009). However, no

6    sanctions were issued. *Id.*

7    Here, the action taken by Kelly's counsel is not as severe. Kelly's counsel apparently had

8    Exhibit 10 in his possession during another, subsequent deposition believing that it had been

9    properly disclosed. However, this action still violates FED. R. CIV. P. 26(b)(5)(B). Despite

10   counsel's violation, sanctions will not be ordered at this time. Though the parties discussed the

11   situation surrounding Exhibit 10 during the deposition, there is still significant confusion

12   between the parties as evidenced in their briefing that leads the Court to infer that no real

13   substantive discussions took place in order to resolve this matter without Court intervention as

14   required by LR 26-7(b) and FED. R. CIV. P. 37(a)(1).

15   For example, both parties disagree as to whether a stipulation was possible, whether a

16   conference call with the Court would be initiated, whether the court reporter received Exhibit 10

17   under seal and other facts surrounding the deposition and the discussions held therein.

18   ## CONCLUSION

19   Based on the foregoing, and good cause appearing therefore,

20   IT IS HEREBY ORDERED that Defendant's Emergency Motion for Protective Order

21   (#139) is **GRANTED**.

22   IT IS FURTHER ORDERED that on or before August 22, 2011, Defendant shall file an

23   affidavit of attorneys' fees and costs incurred in bringing the Motion for Protective Order (#139).

24   IT IS FURTHER ORDERED that any response to affidavit of attorneys' fees and costs

25   shall be filed on or before August 29, 2011.

26   IT IS FURTHER ORDERED that a hearing on the affidavit of attorneys' fees and costs is

27

28                                          6

scheduled for September 1, 2011, at 11:00 AM in LV courtroom 3D, 3d floor, Lloyd D. George

United States Courthouse, 333 Las Vegas Blvd. S., Las Vegas, Nevada, 89101.

      DATED this 10th day of August, 2011.




_____
ROBERT J. JOHNSTON
United States Magistrate Judge

7