UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES KELLY,

    Plaintiff,

v.

CSE SAFEGUARD INSURANCE, COMPANY,

    Defendant.

Case No. 2:08-CV-0088-KJD-RJJ

**ORDER**

    Presently before the Court is Defendant's Motion for Summary Judgment (#127). Plaintiff filed a response in opposition (#128) to which Defendant replied (#130).

I.  Facts

    The present action for bad faith results from an underlying five vehicle automobile accident in Las Vegas, Nevada on March 16, 2001. The accident occurred when Jose Luis Cruz ("Cruz"), while intoxicated, was driving a car owned by Andres Torres Flores ("Flores"). Flores was insured by CSE Safeguard Insurance Company ("CSE") with policy limits of $15,000/$30,000. Cruz was driving the car with the permission of Flores, who was not present or involved in the accident. Cruz rear-ended a vehicle, which in turn rear-ended a vehicle driven by Plaintiff James Kelly ("Kelly"). Kelly suffered soft-tissue injuries and by March 28, 2001, had incurred $4,780.00 in medical bills.

1  The traffic accident report clearly identified the name and address of Flores' insurer: CSE Safeguard
2  Insurance Company, P.O. Box 80260, Phoenix, Arizona 85060.
3        On March 19, 2001, three days after the accident, Kelly retained Christensen Law Offices
4  ("CLO") to represent him regarding potential claims from the accident.  Attorney Scott Van Alfen of
5  CLO sent a letter of representation ("the Letter of Representation") addressed to: Safeguard
6  Insurance, Attn: Claims Department, 9300 Arrowpoint Blvd., Charlotte, NC 28210.  However,
7  Safeguard Insurance is not related to Defendant CSE Safeguard Insurance Company ("CSE") in any
8  manner.  Additionally, the North Carolina address was not related in anyway to CSE Safeguard
9  Insurance.  CSE claims that it did not receive the Letter of Representation.
10       Van Alfen does not know where he obtained the address for the Letter of Representation, but
11 stated that he often used traffic accident reports to obtain insurance information.  The insurance
12 policy number contained in the Letter of Representation matched Flores' insurance policy number
13 contained in the police report that contained the correct address for CSE.
14       On March 19, 2001, Van Alfen also sent a letter of representation ("the Flores Letter") to
15 Flores.  Flores forwarded the letter to his insurance agent who forwarded it to CSE.  On March 26,
16 2001, Claims representative Lance Palko sent a letter of acknowledgement ("the March 26th Letter")
17 to CLO on behalf of CSE.  The March 26th letter clearly identified the correct name of Flores'
18 insurer, CSE, and their correct Arizona mailing address, phone and fax number.
19       In the letter, Palko acknowledged CLO's representation of Kelly and requested all medical
20 bills, medical reports and wage loss documentation relevant to the claim.  Palko also spoke with
21 CLO and was advised that they would send him a copy of the Traffic Accident Report.  CLO never
22 directly responded to Palko's letter.
23       On March 28, 2001, one week after the accident, Van Alfen sent a policy limit demand letter
24 ("the Demand Letter") on behalf of Plaintiff.  The letter offered to settle Plaintiff's claims for the
25 policy limits on the condition that CSE meet the demand within two weeks.  The letter identified five
26 "providers" who had treated Plaintiff.  The letter did not include any medical bills or records but

1  stated that authorizations to release medical records were enclosed.  Plaintiff alleges that as of March
2  28, 2001, his medical specials totaled $4,780.00, though that information was not included in the
3  letter.

4  However, the March 28, 2001 Demand Letter was, like the Letter of Representation,
5  addressed to the wrong insurance company at the wrong address, though it was sent to the attention
6  of "Lance Palko" rather than the Claims Department.  At his deposition, Van Alfen agreed that he
7  mailed the Demand Letter the same day that he received CSE's March 26th Letter which correctly
8  identified the name of the insurer, the address, the claim number and Palko as the claims
9  representative for CSE.  Van Alfen could not explain why the Demand Letter was sent to the wrong
10  address, but was sent to Palko's attention with the correct claim number.  CSE claims that it did not
11  receive the Demand Letter.

12  On May 22, 2001, Kelly filed suit against Cruz and Flores in Nevada State Court.[1]  On May
13  24, 2001, CLO sent CSE a copy of the complaint, this time to the correct insurer at the correct
14  address.  On May 30, 2001, CSE claims representative, Sorex Viraco, contacted Plaintiff's counsel.
15  Viraco denied receiving the Demand Letter and medical authorizations and requested additional
16  copies and an extension of time to comply with the Demand.  However, CLO never responded to
17  Viraco's request.

18  CSE retained attorney Corey Hilton to represent Flores and Cruz in the underlying State
19  Court action.  Cruz was served through the Department of Motor Vehicles.  Flores was served by
20  publication.  Cruz was never located, and Hilton was unable to locate or contact Flores until April
21  2005.

22  On July 3, 2002, a Joint Case Conference in the State Court proceeding was held.  At the
23  Conference, Kelly provided, for the first time, medical records and bills establishing that his medical
24  expenses totaled more than $30,000.00 as a result of the accident.  Pursuant to Nevada Rule of Civil

---

[1] After Plaintiff was unable to locate and timely serve Flores and Cruz, the original action was voluntarily dismissed and refiled on April 4, 2002.

Procedure 68 and NRS 17.115, Hilton, on behalf of his clients, made an offer of judgment for $15,000.00 based on the policy limits.

CLO then negotiated an excess stipulated judgment agreement ("the Agreement") between Plaintiff and Flores. Pursuant to the Agreement, Flores stipulated to liability and agreed not to contest that Kelly's damages totaled at least $800,000.00, agreed to cooperate with Kelly in pursuing "all claims" against CSE, and Kelly agreed not to execute on the stipulated judgment for ten (10) years from the date of the Agreement which was signed on October 30, 2006. Cruz's Answer was struck and default entered against him on May 25, 2007, due to his failure to participate in the litigation. On November 27, 2006, a prove-up hearing was held in State Court. On February 20, 2007, Judgment against Cruz and Flores in the amount of $1.5 million dollars was entered by the State Court.

On December 19, 2007, Plaintiff Kelly, Cruz and Flores filed suit against CSE asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, and violations of NRS 686A.310. Specifically, Plaintiff Kelly alleges that CSE failed to settle Plaintiff's claim within policy limits when it had an opportunity to do so and failed to inform Cruz and Flores of Plaintiff's willingness to settle for the policy limits. Cruz and Flores were dismissed as parties, because Plaintiff Kelly had purchased Cruz's "chose in action" against CSE and Flores had assigned his rights against CSE to Kelly.

Defendant CSE has now moved for summary judgment on Plaintiff's remaining claims asserting that it did not breach its contract with the insureds, that it did not breach the covenant of good faith and fair dealing and did not violate statutory duties. Primarily, CSE argues that it never received the Demand Letter and therefore did not fail to settle the action timely. Plaintiff argues that unequivocal evidence demonstrates that CSE received and responded to the Demand Letter, but failed to adequately represent its clients.

4

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III.  Analysis

    A. Breach of the Covenant of Good Faith and Fair Dealing for Failure to Settle within Policy Demands

Insurance contracts contain an implied covenant of good faith and fair dealing. Allstate Ins. Co. v. Miller, 212 P.3d 318, 324 (Nev. 2009). "The law, not the insurance contract, imposes this covenant on insurers." Id. (citing United States Fid. & Guar. Co. v. Peterson, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (Nev. 1975)). A violation of the covenant gives rise to a bad-faith tort claim. Id. The Nevada Supreme Court has defined bad faith "as the actual or implied awareness of the absence of a reasonable basis for denying [or delaying payment of] benefits of the [insurance] policy." Id. (quoting Am. Excess Ins. Co. v. MGM, 102 Nev. 601, 605, 729 P.2d 1352, 1354-55 (Nev. 1986)).

The implied covenant requires the insurer to settle the case within policy limits when there is a substantial likelihood of recovery in excess of those limits. See Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 941 (Cal. 1976). The duty to settle is "implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble  – on which only the insured might lose." Id.  When the insurer breaches its duty to settle, the insured has been allowed to recover excess award over policy limits and other damages.  Id.

Plaintiff asserts that at a minimum he has raised a question of fact that prevents the Court from granting summary judgment.  Primarily, Plaintiff argues that the evidence shows that the Demand Letter was received by CSE and that its failure to respond within the two-week deadline asserted by his counsel raises questions of fact that should go to a jury.  The Court disagrees.

The Court recognizes that this is merely one of several cases in which Plaintiff's counsel's practice of sending form demand letters asserting arbitrary two-week deadlines requiring insurers to determine whether a claim might exceed the policy limits has been criticized as "attempts to set up bad faith claim[s]." AAA Nevada Ins. Co. v. Chau; 2010 WL 2802164, *4, fn. 1 (D. Nev. July 15,

6

2010); Hicks v. Dairyland Ins. Co., 2010 WL 2541175, *8-10 (D. Nev. March 3, 2010). However, the Court's basis for granting Defendant's motion for summary judgment lies in the undisputed facts of the case.

First, it is undisputed that Plaintiff sent the Letter of Representation and the Demand Letter to the wrong address. Plaintiff has presented no evidence from which a reasonable person could conclude that the Demand Letter was sent to Defendant. Even after Defendant's claims representative acknowledged CLO's representation of Plaintiff in a letter that contained the correct address, Plaintiff continued to use the incorrect address. Plaintiff mostly argues that CSE must have had a copy of the letter because CSE faxed the Demand Letter on June 14, 2001 to Attorney Corey Hilton who it had hired to represent Cruz and Flores in the underlying state court litigation. However, Plaintiff's assertion does not withstand the facts. The copy of the Demand Letter found in Cory Hilton's file bears a date and time stamp showing that the letter was faxed to Hilton on "11-14-05, 12:47 p.m." Though the Demand Letter, as produced in discovery of Hilton's file, was sequentially next to a fax cover sheet from CSE sent to Hilton on June 14, 2001, the date and time stamp show that it was not sent with the cover sheet. Therefore, the Demand Letter found in Hilton's file does not raise an issue of fact preventing summary judgment.

Second, the fact that CSE responded to the Letter of Representation does not create an issue of fact. Regardless of how CSE acquired a copy of the Letter of Representation, the record is clear that despite having been informed of the correct address in Palko's response to the Letter of Representation, CLO still sent the Demand Letter to the wrong address. Rather than helping Plaintiff's case, this fact works against Plaintiff.

Therefore, any portion of Plaintiff's claims based upon Defendant's failure to tender the full policy limits within fourteen days of the Demand Letter being sent must be dismissed. Additionally, any claim for failure to settle between the filing of the original law suit and entry of the stipulated excess judgment must be dismissed. When CSE realized the original suit had been filed, it contacted CLO and informed them that it had never received the Demand Letter. CSE requested medical

records and releases so that it could investigate the claim.  CLO failed to respond to the request until the Early Case Conference for the second filed action in July 2002.  Cruz and Flores' counsel in that action offered to settle for the policy limits on or about April 4, 2002, and made an offer of judgment for the policy limits on or about July 3, 2002.  CLO never responded to the offer.  Nor has Plaintiff offered any proof contrary to Hilton's sworn assertion that he made an open-ended policy limit offer to settle the second action when it was filed on or about April 4, 2002.  Accordingly, the undisputed facts show that CSE did not unreasonably fail to respond to the Demand Letter.  Furthermore, CSE did not unreasonably delay in offering the policy limits, because Plaintiff was dilatory in responding to CSE's request for medical records.

      B.  Failure to Inform

The implied covenant of good faith and fair dealing in an insurance contract includes a duty to adequately inform. Allstate, 212 P.3d at 324.  "Primary liability insurance policies create a cascading hierarchy of duties between the insurer and the insured." Id.  At the top of the hierarchy are two general duties: the duty to defend and the duty to indemnify. Id.  The duty to defend contains two potentially conflicting rights: the insurer's right to control settlement discussions and its right to control litigation against the insured. Id. (citing 14 *Couch on Insurance* 3d §§ 200:1; 203:1 (2005)).  The right to control settlement discussions creates the duty of good faith and fair dealing during negotiations. Id.

"A primary insurer's right and duty to defend attaches when the insured tenders defense of the lawsuit to the insurer and carries with it the duty to communicate to the insured any reasonable settlement offer that could affect the insured's interest." Id. (citing Heredia v. Farmers Ins. Exch., 279 Cal.Rptr. 511, 519-20 (Cal. Ct. App. 1991)).  Thus, "an insurer's duty to adequately inform the insured begins upon receipt of a settlement demand and continues through litigation to final resolution of that claim." Id. at 325.  As a result, "if an insurer fails to adequately inform an insured of a known reasonable settlement opportunity prior to the filing of a claimant's lawsuit, the insurer may breach its duty of good faith and fair dealing." Id.

According to the Nevada Supreme Court, the failure to adequately inform the insured about a reasonable settlement offer is a factor in a bad faith claim. Id. "This duty to adequately inform an insured arises from the special relationship between the insured and the insurer, which is similar to a fiduciary relationship." Id. (citing Ainsworth v. Combined Ins. Co., 104 Nev. 587, 592, 763 P.2d 673, 676 (Nev. 1988)). Although the Nevada Supreme Court "has refused to adopt a standard where an insurance company must place the insured's interests over the company's interests, the nature of the relationship requires that the insurer adequately protect the insured's interest." Id. Thus, at a minimum, "an insurer must equally consider the insured's interests and its own." Id.

In this action, Plaintiff asserts that CSE failed to inform Flores and Cruz of the settlement demand in the underlying action. CSE does not dispute that it did not inform Flores and Cruz of the Demand Letter. However, Flores and Cruz made themselves unavailable to all parties during most of the underlying action. Plaintiff asserts that Flores' deposition testimony, taken April 7, 2005, establishes that he lived at his residence at the time of the accident and for eight months after the accident and had maintained the same phone number for the past five years. The flaw in Plaintiff's argument lies in the undisputed facts and record of the underlying action.

Plaintiff's original action filed on May 22, 2001 had to be voluntarily dismissed, because Plaintiff was unable to locate and serve the defendants, Flores and Cruz. Furthermore, when the action was refiled on April 4, 2002, Plaintiff had to use alternative forms of service: Cruz was served through the Department of Motor Vehicles and Flores was served by publication. Flores was not located until April 2005. Given Plaintiff's failure to locate Flores, even for service, in 2001 and 2002, it is not reasonable to conclude that he was available to CSE, without more facts. Accordingly, the Court grants Defendant's motion for summary judgment on the failure to inform claim, because CSE never received the Demand Letter and because the insureds were not available to inform.

C. Damages and the Stipulated Excess Judgement Agreement

Even if the Court were to deny the motion for summary judgment on the claims for failure to settle within policy limits and failure to inform of settlement offer, the Court would still grant

summary judgment, because Plaintiff cannot establish damages based on the stipulated excess judgment obtained in state court.  Plaintiff argues that because the state court held a prove-up hearing that it was a judgment entered on the merits.  However, "the agreed judgment cannot be fairly attributed to the insurer's conduct, even if the insurer's refusal to settle within the policy limits was unreasonable." Hamilton v. Maryland Casualty Co., 41 P.3d 128, 137 (2002).  A "litigated" excess judgment must be obtained, before it can be used as a presumptive measure of insured's damages. Id. at 133 ("the judgment provides no reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiffs' cause of action").

Similar to Hamilton, the $1.5 million judgment in this case was the result of a stipulated excess judgment ("the Agreement") between Flores and Plaintiff. Pursuant to the terms of the Agreement, Flores stipulated to liability and not to contest that Plaintiff's damages totaled at least $800,000.00.  Flores was required to "cooperate" in pursuing all claims against CSE and Plaintiff agreed not to execute against Flores for ten (10) years from the date of the judgment.  Therefore, due to the stipulation and Flores' agreement not to contest damages, the stipulated excess judgment was not "litigated[.]" Therefore, the Court grants the motion for summary judgment on the basis that Plaintiff has not proven damages.

### D.  Flores' Assignment to Plaintiff

Furthermore, Plaintiff lacks standing because Flores' October 14, 2009 Assignment of Rights is invalid for lack of consideration.  Because an assignment is a contract, its construction and enforcement are governed by principles of contract law. See May v. Anderson, 121 Nev. 668, 672, 119 P.3d 1254 (Nev. 2005). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." Id.  "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." Id.

In Nevada, in order to constitute consideration, "a performance or return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." In re Fullmer,

1  323 B.R. 287, 296 (Bkrcty. D. Nev. 2005)(quoting Pink v. Busch, 100 Nev. 684, 688, 691 P.2d 456
2  (Nev.1984)).

3        The record in the present case reveals that no "bargained for exchange" occurred between
4  Flores and Plaintiff.  In this regard, although the document itself states that the assignment is for
5  "value received," Plaintiff testified at his deposition that the only benefit to Flores from the
6  assignment was Plaintiff's covenant not to execute contained in the October 30, 2006 Agreement,
7  signed three (3) years earlier.  Based on this, it appears that Plaintiff is arguing that the consideration
8  for the assignment was Plaintiff's refusal to execute on the judgment.  However, the non-execution
9  was part of a previous agreement entered into between the parties.  Under Nevada law, that is not
10 sufficient, on its own, to create consideration for a new contract.  See Clark County v. Bonanza No.
11 1, 96 Nev. 643, 650-51, 615 P.2d 939 (Nev. 1980)(holding that "consideration is not adequate when
12 it is a mere promise to perform that which the promisor is already bound to do").  Accordingly,
13 Flores' Assignment to the Plaintiff is invalid for lack of consideration, and therefore, Plaintiff has no
14 standing to pursue Flores' bad faith claim.

15       E.  Cruz's Breach of the terms of the Insurance Contract

16       Finally, the Court grants summary judgment on all claims brought under Cruz's rights from
17 the insurance contract.  The insurance contract at issue in this case imposed a duty to cooperate on
18 any insured.  That duty included making settlements, securing and giving evidence, attending
19 hearings or trials, and giving statements under oath.  As noted above, Cruz disappeared shortly after
20 the accident, and has failed to cooperate in any meaningful way with CSE's handling of the claim,
21 the underlying lawsuit, and the present action.  An insured's breach of the insurance contract
22 precludes his breach of contract claims, breach of the covenant of good faith and fair dealing claims
23 or claims arising under state statute.  See Cybernet Ventures, Inc. v. Hartford Ins. Co., 168 Fed.
24 Appx. 850, 853 (9th Cir. 2006); Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App.4th 966, 976, 94
25 Cal. Rptr.2d 516 (Cal. Ct. App. 2000); Brizuela v. Calfarm Ins. Co., 116 Cal. App.4th 578, 593-94,
26 10 Cal. App.4th 966, 976, 94 Cal. Rptr.2d 516 (2000).  The fact that CLO purchased whatever

"chose in action" Cruz had, merely means that it purchased what rights or causes of action that Cruz had at time of the sale. Since Cruz's breach of the insurance contract and resulting waiver of his rights occurred before the sale, CLO essentially purchased dead claims. Accordingly, the Court dismisses Cruz's claims for breach of his duties as an insured.

F.  Claims under NRS § 686A.310

Since the state law claims are based on the same facts that resulted in dismissal of Plaintiff's breach of contract and bad faith claims, the Court similarly dismisses all claims arising under state statute.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#127) is **GRANTED**;

IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant CSE Safeguard Insurance Company and against Plaintiff.

DATED this 27th day of September 2011.

_____
Kent J. Dawson
United States District Judge